1

2

3

4

5

6

7



## NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

In re:

ARIA Y. KOZAK and DONNA J. KOZAK,

Debtors.

CASE NO. SV 03-20278 MT

Chapter 7

**MEMORANDUM DECISION ON ORDER TO SHOW CAUSE WHY PACKING CRATE CLASSICS, INC. SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR WILLFULLY VIOLATING THE DISCHARGE INJUNCTION**

## I. Introduction

Defendant Packing Crate Classics, Inc. ("PCC") received judgments against the debtors for attorney fees and costs expended post-petition in two tracks of litigation brought pre-petition by the debtors. The first judgment of $36,730.89 arose in defending the debtors' appeal in a first track of litigation and the second judgment of $86,481.25 arose in defending the debtors' cross-

1   complaint in a second track of litigation.  Both tracks of litigation were initiated prior to the

2   debtors' bankruptcy petition filing but were concluded post-petition.  In response to PCC's

3   efforts at collecting these judgments, the debtors filed a motion requesting the court to issue an

4   order to show cause why PCC should not be held in contempt of court for violating the debtors'

5   discharge injunction.  Debtors seek the imposition of sanctions against PCC in the amount of

6   $25,000.  PCC claims the judgments were not discharged through bankruptcy because the

7   debtors pursued both tracks of litigation post-petition.  Because the first track of litigation was

8   prosecuted almost exclusively by the debtors Chapter 7 Trustee after the debtors filed their

9   bankruptcy, I find that the debtors did not take sufficient affirmative post-petition actions to

10   further this litigation.  As such, the $36,730.89 judgment was discharged through the debtors'

11   bankruptcy.  However, sanctions against PCC are not warranted at this time.  By contrast, with

12   regard to the cross-complaint in the second track of litigation, I find that the debtors did take

13   affirmative post-petition actions in pursing the litigation against PCC.  As a result, all attorney

14   fees and costs incurred by PCC in defending the debtors cross-complaint after May 3, 2005 were

15   never discharged.

16   **II. Chronology of Events**

17         While the history of this case is long, it is essential to an understanding of whether the

18   debtors took any affirmative acts post-petition.  It is detailed here based on undisputed partial

19   histories in the briefs, transcripts, dockets, and other documents filed by the parties.  It was

20   supplemented by the testimony of Robert Beechen on June 26, 2007.

21         In December 1999, the debtors and PCC entered into a written settlement agreement

22   regarding a dispute over residential property located in Malibu, California. At the time the

23   agreement was signed, the debtors were leasing the property from PCC.  Litigation ensued when

24   the debtors alleged that PCC breached the 1999 settlement agreement by not allowing the debtors

25   to purchase the property.  In October 2002, the debtors filed a motion in Los Angeles County

26

1 Superior Court seeking an order compelling PCC to sell them the property.  On November 19,

2 2002, the Superior Court denied the debtors' motion.  On February 4, 2003, the debtors filed an

3 appeal of the Superior Court decision in the California Court of Appeal.

4        The debtors' appeal was left pending for the next two years, during which time additional

5 litigation erupted between the debtors and PCC.  Another party brought suit against both the

6 debtors and PCC regarding the same Malibu property.  In response, the debtors filed a cross-

7 complaint against PCC in Superior Court on April 3, 2003.  PCC filed an answer to the cross-

8 complaint on May 6, 2003.  While both tracks of litigation were still pending, the debtors filed

9 for Chapter 7 bankruptcy on December 24, 2003.  The debtors listed PCC in their bankruptcy

10 filings as a creditor holding an unsecured nonpriority claim.

11        On December 29, 2003, only five days after filing bankruptcy, the debtors filed an

12 opening brief in their appeal in the first track of litigation.  On January 21, 2004, a status

13 conference was held on the cross-complaint, and the matter was continued.  On June 7, 2004, the

14 debtors' Chapter 7 trustee, David Seror, filed an application to employ Knickerbocker Law

15 Corporation for the express purpose of pursuing the appeal in the first track of litigation and the

16 cross-complaint in the second track of litigation.  This application was served on PCC's counsel,

17 Paul Beechen.  No objections were filed, and Mr. Knickerbocker was employed on behalf of the

18 estate.

19        On June 15, 2004, the debtors were granted a discharge.  On March 21, 2005, the

20 California Court of Appeal affirmed the Superior Court's decision regarding the first track of

21 litigation and rejected the debtors' appeal.  On April 25, 2005, Mr. Beechen sent a letter to Mr.

22 Seror (the debtors' Chapter 7 trustee), Mr. Knickerbocker (the trustee's counsel and the debtors'

23 state court counsel), and Merritt & Hagen (the debtors' bankruptcy counsel).  In the letter Mr.

24 Beechen demanded that the debtors dismiss their cross-complaint because it was based on the

25 same issues that were decided against the debtors in the court of appeal decision.  The only

26

1    response to Mr. Beechen's letter was a reply letter from the trustee's counsel dated April 28,

2    2005. This letter, which was also sent to Mr. Knickerbocker, stated the trustee would file a no

3    asset report and asked "in light of this information, [to] please take any steps you feel necessary

4    with respect to the state court litigation." On April 29, 2005, Mr. Beechen sent a letter to Mr.

5    Knickerbocker asking him to dismiss the cross-complaint immediately. There was no response

6    by Mr. Knickerbocker or the debtors to this letter. On May 3, 2005, the Trustee filed a notice of

7    no assets and abandonment. On that same date, the Superior Court held  another status

8    conference on the debtors' cross-complaint and the matter was again continued. On May 12,

9    2005, the bankruptcy court issued an order closing the debtors' bankruptcy case.

10            On June 15, 2005, PCC moved to recover attorney fees from the debtors for efforts in

11    defending the debtors' appeal. PCC filed supplemental briefings  on July 12, 2005 and August

12    16, 2005. Oppositions to the motion were filed by Mr. Knickerbocker on July 6, 2005 and

13    September 6, 2005. One of the debtors' briefs on attorney fees stated that "multiple issues

14    remain" after the court of appeal ruling. On September 23, 2005, the Superior Court awarded

15    PCC $36,730.89 in attorney fees and costs.

16            On June 7, 2005, Mr. Beechen sent a letter to the debtors' state court counsel (Mr.

17    Knickerbocker) and the debtors' bankruptcy counsel (Merritt & Hagen) stating that the debtors

18    should dismiss their cross-complaint against PCC, and if they did not, he would seek sanctions.

19    (Exhibit D to Beechen Decl., filed July 10, 2007). Mr. Beechen never received a response. On

20    July 20, 2005, a status conference on the cross-complaint was held, and the matter was again

21    continued.

22            On September 21, 2005, PCC filed a motion for summary judgment seeking dismissal of

23    the debtors' cross-complaint based on collateral estoppel relating to the court of appeal ruling.

24    On December 5, 2005, Mr. Knickerbocker filed an ex-parte application seeking an order to

25    continue the motion for summary judgment. On February 7, 2006, Mr. Knickerbocker filed an

26

1   opposition to the summary judgment motion.  On February 8, 2006 and February 13, 2006, Mr.

2   Knickerbocker sent letters to Mr. Beechen and the debtors indicating that he was trying to

3   continue the summary judgment hearing in order to be relieved as counsel.  On February 10,

4   2006, Mr. Knickerbocker requested a continuance of the summary judgment motion and

5   requested that his motion to be relieved as counsel be advanced, relying on a breakdown in the

6   attorney-client relationship.  He stated that a brief continuance of the "motion will not prejudice

7   [his clients'] rights, neither would it affect the merits of their case or motion."  The Superior

8   Court denied his motion to be relieved as counsel.  On February 15, 2006, Mr. Knickerbocker

9   brought a motion for a brief continuance of the summary judgment motion.  The court denied this

10  motion.  On February 21, 2006, the Superior Court heard arguments regarding PCC's summary

11  judgment motion and took the matter under submission.  Mr. Knickerbocker argued that the

12  motion should not be granted and that the cross-complaint should not be dismissed.

13       On March 7, 2006, the Superior Court granted Mr. Knickerbocker's motion to be relieved

14  as the debtors counsel.  On March 10, 2006, Mr. Knickerbocker sent a letter to Mr. Beechen

15  regarding an extension of time "to exchange expert witness information" and to permit new

16  counsel for the Kozaks to evaluate the case and to designate an expert of their choice."  (Exhibit

17  F to Beechan Decl.)  Mr. Beechen also testified that Mr. Knickerbocker verbally indicated to him

18  that the debtors were proceeding with the case.  On August 2, 2006, the court granted summary

19  judgment in favor of PCC against the debtors on their cross-complaint.

20       On August 18, 2006, PCC filed a motion for attorney fees and costs associated with

21  defending against the debtors' cross-complaint.  On August 25, 2006, David Hagen, the debtors'

22  bankruptcy counsel, sent a letter to Mr. Beechen warning it would be a violation of the debtors'

23  discharge if he took action to recover the attorney fees awarded to PCC in relation to the debtors'

24  appeal in the first track of litigation.  In response, Mr. Beechen sent a letter dated September 12,

25  2006 to Mr. Hagen stating PCC was not in violation of the discharge because the appeal was

26

1   prosecuted post-petition in the name of the debtors. On October 16, 2006, the debtors, *pro se*,

2   filed an appeal of the summary judgment ruling. On November 2, 2006, PCC filed a reply to the

3   debtors' notice of appeal. On November 3, 2006, Mr. Hagen sent another letter to Mr. Beechen,

4   warning that PCC was violating the discharge injunction by taking action to collect on judgment

5   debts against the debtors. On November 30, 2006, the Superior Court granted PCC's motion for

6   attorney fees. On December 8, 2006, the debtors filed an objection to the proposed order

7   awarding attorney fees. On January 23, 2007, the Superior Court issued a final order awarding

8   PCC fees of $86,481.25 plus costs to be paid by the debtors.

9   **III. Applicable Law**

10         **A. Discharge Injunction**

11         A discharge "operates as an injunction against the commencement or continuation of an

12   action . . . to collect, recover or offset any [discharged] debt as a personal liability of the debtor."

13   11 U.S.C. § 524(a)(2). A party who knowingly violates the discharge injunction can be held in

14   contempt under Section 105(a) of the Bankruptcy Code. *See Renwick v. Bennett, (*In re *Bennett)*,

15   298 F.3d 1059, 1069 (9th Cir. 2002). The party "seeking contempt sanctions has the burden of

16   proving, by clear and convincing evidence, that the sanctions are justified . . . '[T]he movant

17   must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended

18   the actions which violated the injunction.'" *ZiLOG, Inc. v. Corning (*In re *ZiLOG, Inc.)*, 450

19   F.3d 996 (9th Cir. 2006) (citations omitted).

20         Attorney fees and costs incurred by a debtor's affirmative actions in litigating after the

21   filing of bankruptcy are not discharged through bankruptcy, even if the litigation was initiated

22   before the bankruptcy filing. *Boeing N. Am., Inc. v. Ybarra (*In re *Ybarra)*, 424 F.3d 1018 (9th

23   Cir. 2005). *Ybarra* states that "whether attorney fees and costs incurred by debtor through the

24   post-petition prosecution of litigation initiated pre-petition may be discharged in bankruptcy

25   depends on whether the debtor has taken affirmative post-petition action to litigate a pre-petition

26

1  claim and has thereby risked the liability of these litigation expenses." *Id.* at 1026. *Ybarra* found

2  that the appellee "returned to the fray" by choosing to pursue litigation instead of accepting a

3  settlement offer and by choosing to attempt to persuade the state court to reverse a previous

4  dismissal of her case to allow her to continue to pursue litigation post-petition.

5       Similarly, in *Siegel* the Ninth Circuit Court of Appeals held that the appellant's decision

6  to pursue litigation post-petition made the appellant subject to attorney fees even though the

7  origins of the litigation came from a pre-petition agreement.  *Siegel* rejected the appellant's

8  argument that his bankruptcy discharge distinguished his obligation under the pre-petition

9  contract to pay the appellee's attorney fees, stating:

10                    [T]he debtor [] had been freed from the untoward effects of
                      contracts he had entered into. [His creditor] could not pursue him
11                    further, nor could anyone else. He, however, chose to return to the
                      fray and to use the contract as a weapon.  It is perfectly just . . . to
12                    allow the same weapon to be used against him.

13  *Siegel v. Federal Home Loan Mortg. Corp.,* 143 F.3d 525, 533 (9th Cir. 1998).  According to

14  *Siegel,* the appellant's bankruptcy "protect[ed] him from the results of his past acts, including

15  attorney's fees associated with those acts, it did not give him carte blanche to go out and

16  commence new litigation about the contract without consequences." *Id.* at 534.

17  **B.  Rooker-Feldman**

18       PCC argues the Rooker-Feldman doctrine restricts this court from determining the scope

19  of the debtors' discharge order because the Superior Court purportedly has already determined

20  that the debtors' discharge does not cover PCC's award of attorney fees.  Therefore, according to

21  PCC,  a determination by this court on the matter would be equivalent to this court impermissibly

22  acting as an appellate court of review on a state court.  Contrary to PCC's argument, the Rooker-

23  Feldman doctrine does not restrict this court from making this determination.

24       The Rooker-Feldman doctrine "is confined to . . . cases brought by state-court losers

25  complaining of injuries caused by state-court judgments rendered before the district court

26

1   proceedings commenced and inviting district court review and rejection of those judgments."

2   *Sherman v. Harbin (*In re *Harbin)*, 486 F.3d 510, 519 (9th Cir. 2007), *quoting Exxon Mobil*

3   *Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Ninth Circuit has limited the

4   application of the Rooker-Feldman. It has held that:

5       State courts should not intrude upon the plenary power of the federal
        courts in administering bankruptcy cases by attempting to modify or
6       extinguish federal court orders . . . Just as a state court does not have the
        power to modify or dissolve the automatic stay, a state court also lacks
7       authority to modify or dissolve a discharge order or the 11 U.S.C. § 524
        discharge injunction.

8   *McGhan v. Rutz (in Re McGhan)*, 288 F.3d 1172, 1179 (9th Cir. 2002).

9       After reviewing the transcript from the Superior Court, it is clear there was no specific

10  ruling by that court regarding the scope of the debtors' discharge injunction. While both sides

11  argued the point, the Superior Court ignored both sides' arguments. It appears the court avoided

12  ruling on the question. Because the Superior Court did not rule on the discharge injunction, this

13  court is not acting as an "appellate court." In fact, this issue was never "necessarily decided."

14  This court is addressing a question left unaddressed by the Superior Court's ruling.

15      Additionally, even if the Superior Court necessarily decided the scope of the debtors'

16  discharge, that decision would not limit this court's ability to make a determination on the scope

17  of the discharge. The Ninth Circuit has stated that "the Rooker-Feldman doctrine does not

18  deprive federal courts of jurisdiction over the scope and applicability of the stay . . . as well as

19  state court intrusions on all 'bankruptcy court orders' (or other 'core' bankruptcy proceedings)

20  . . . ." *Id.* Given that disputes relating to the discharge are core bankruptcy proceeding, any

21  stated determination on the matter would not deprive this court of jurisdiction. Therefore, the

22  Rooker-Feldman doctrine does not apply.

23  **IV.  Analysis**

24      In claiming that PCC had notice of the permanent injunction and knowingly violated it,

25  the debtors argue that both of the attorney fee awards PCC seeks to collect arise from pre-petition

26

- 8 -

1  claims and that the facts of this case are distinguishable from *Ybarra*.  With respect to their

2  appeal in their first track of litigation, the debtors contend they did not personally prosecute the

3  appeal; the Chapter 7 trustee did.  With respect to the second track of litigation, the debtors

4  contend they did not take any post-petition actions other than appear at the hearing on the motion

5  for summary judgment.  As such, the debtors argue that they have not "returned to the fray" in

6  either track of litigation within the meaning of *Ybarra*.

7       PCC counters that *Ybarra* is fully on point.  In the debtors' first track of litigation, PCC

8  argues that the fact that the appeal was prosecuted in the debtors' name is dispositive.  In the

9  debtors' second track of litigation, PCC contends that the fact that the debtors continued to

10 litigate post-petition clearly amounts to "returning to the fray."  Thus, both attorney fee awards

11 are post-petition claims, and PCC can assert these claims against the debtors without violating

12 the discharge injunction.

13      Both sides to this dispute have conflated the two litigation tracks in order to reach these

14 conclusions.

15 **A.  First Litigation Track (Appeal)**

16      The first track of litigation began when the debtors commenced a pre-petition appeal on

17 February 4, 2003.  Ten months later, the debtors filed bankruptcy and the Chapter 7 trustee hired

18 litigation counsel to prosecute the appeal.  The Chapter 7 trustee never formally substituted into

19 the first track of litigation.  Mr. Knickerbocker was, however, operating on behalf of the Chapter

20 7 trustee throughout the appeal.  While the opening brief was filed in debtors' names, the reply

21 brief was in the trustee's name.  The appellate court sustained the trial court's ruling on March

22 21, 2005.  On September 23, 2005, following remittitur and on the motion of PCC, the Superior

23 Court awarded $36,740.89 in post-petition fees and costs against the debtors in favor of PCC.

24      Because the debtors did not actively pursue the appeal, they have not "returned to the

25 fray" in regards to this litigation.  The trustee pursued the litigation.  The trustee is not the

26

1    debtors' agent. In fact, even if the debtors had wished to dismiss the appeal, they could not have,

2    as the appeal was in the trustee's hands. The trustee apparently believed the debtors had a good

3    argument on appeal but was proven wrong. The argument that the debtors "returned to the fray"

4    because the trustee failed to formally substitute into the appeal elevates form over substance.

5    The fact that the debtors formally remained the nominal appellants does not amount to "returning

6    to the fray" under *Ybarra*. While the debtors filed the opening brief on appeal five days after

7    filing bankruptcy, this was necessary to preserve the appeal for the estate, and the trustee adopted

8    the cause of action by having the estate employ Mr. Knickerbocker to pursue the appeal.

9            Additionally, the court of appeal did not specifically rule that the debtors were the party

10    to the appeal. The ruling stated: "after commencing the appeal, plaintiffs filed for bankruptcy,

11    and their trustee is named as appellant on the respondent's brief and the appellants' reply brief.

12    The trustee, however, has not filed a substitution of parties with this court, as we accordingly

13    shall continue to refer to the plaintiffs as parties." This is dicta for purposes of ease of reference

14    in a ruling focused on another issue. PCC may very well be estopped from pursuing this

15    argument at all because PCC's respondent brief named the trustee as the appellant. At that point,

16    both the bankruptcy court record and the parties' references to the trustee in the appeal reflected

17    the fact that the trustee was pursuing the appeal.

18            The $36,740.89 in attorney fees and costs claimed under the first track of litigation result

19    from litigation pursued by the trustee and cannot be attributed to the debtors actions, even if the

20    debtor's supported the trustee's position. Thus, the discharge injunction precludes PCC from

21    pursuing the $36,740.89 claim. No sanctions against PCC will be awarded, however. The

22    procedural history of this case is tangled. Because of the second track of litigation discussed

23    below and the lack of any response by the debtors to PCC's inquiries, PCC's actions are

24    understandable and not sanctionable.

25    ///

26

**B. Second Litigation Track (Cross-Complaint)**

In the second track of litigation, the debtors filed a cross-complaint against PCC pre-petition on April 3, 2003 and subsequently filed bankruptcy on December 24, 2003. After the bankruptcy case closed, PCC filed a motion for summary judgment on September 21, 2005, which was granted after the delays described earlier. The Superior Court awarded PCC $87,246.15 in post-petition attorney fees and costs expended in defending against the debtors' cross-complaint.

Whether the attorney fee award based on the summary judgment motion on the cross-claim is subject to the discharge injunction depends in part on whether the failure to withdraw and/or dismiss a cross-claim constitutes affirmative post-petition action under *Ybarra*. The crux of the dispute is how substantial the debtors' post-petition conduct must be. One Eleventh Circuit case describes the situation that occurred here:

> The attorneys fees [the creditor] seeks were incurred by [the creditor] in defending a *post-confirmation* appeal initiated by [the Debtor]. [The Debtor] voluntarily continued to litigate the validity of the Agreement after confirmation of its Chapter 11 plan. [The creditor] had no choice but to defend. By choosing to appeal the validity of the Agreement after confirmation, [the Debtor] did so at the risk of incurring post-confirmation costs involved in its acts. "Bankruptcy was intended to protect the debtor from the continuing costs of pre-bankruptcy acts, but not to insulate the debtor from the costs of post-bankruptcy acts."

*Shure v. Vermont (*In re *Sure-Snap), 983 F.2d 1015, 1018 (11th Cir. 1993). Under this standard, the debtors' post-petition failure to seek dismissal of the cross-complaint constitutes "returning to the fray." The language of *Ybarra* makes clear that by continuing to pursue litigation post-petition, the debtors may be held liable for post-petition attorney fees and costs resulting from that litigation.

As of May 3, 2005, the debtors were on notice that the trustee had abandoned any cause of action back to them. On June 7, 2005, after the debtors' bankruptcy case was closed, Mr. Beechen sent letters to the debtors' counsel seeking a dismissal of their cross-complaint. By

1  failing to respond or indicate their intentions to Mr. Beechen and by not dismissing their cross-

2  complaint, the debtors "returned to the fray." Mr. Knickerbocker may have been unclear whether

3  he still represented the Kozaks after his employment by the estate concluded, but the debtors had

4  a duty to respond to Mr. Beechen's letter whether through their attorney or personally.  In the

5  face of the debtors' failure to respond or seek to dismiss their cross-complaint, PCC had to take

6  action in response to the pending complaint or possibly face judgment themselves.  While the

7  appeal on the first track of litigation was resolved, PCC still faced the debtors' cross-complaint.

8  The summary judgment might never have been filed had the debtors responded to Mr. Beechen's

9  request. Mr. Beechan would not have been effectively representing his clients had he not

10  continued to defend them at that point.

11        Additionally, the debtors actions demonstrated more than a passive lack of response. The

12  debtors appeared at the hearing on the motion for summary judgment to request a continuance to

13  give them more time to file an opposition. This indicated to PCC and the Superior Court that

14  they were still pursuing the action. They also attended numerous status conferences after the

15  bankruptcy case was closed and never indicated in anyway that they were dropping their cross-

16  complaint. They, in fact, filed an opposition on the merits to the summary judgment motion and

17  argued that their cross-complaint should *not* be dismissed. The debtors gave every indication

18  that they were pursuing their cross-complaint. They even sought an extension of time to

19  exchange expert witness information and designate an expert. While the debtors did not file any

20  motions, they left a cross-complaint pending against PCC and gave every indication they were

21  still pursuing it. Mr. Beechen did all that could reasonably be done to determine whether the

22  debtors were dropping everything or continuing to pursue the litigation post-petition.

23        I find that all attorney fees and costs incurred by PCC in defending the cross-complaint

24  after May 3, 2005 are nondischargeable. Those expenses could have been avoided had the

25  debtors simply informed Mr. Beechen that they were dropping the cross-complaint. The case

26

1  was back in their hands at that point, and the trustee's decision to pursue the litigation is no

2  longer at issue.  The debtors had a post-petition decision to make once the trustee abandoned

3  their cause of action.  They gave every indication that they wanted both their discharge and

4  whatever they thought they could gain from the cross-complaint.  If they wanted their discharge

5  to cover post-petition costs, they should have indicated that they dropped their cross-complaint

6  once the trustee abandoned it.

7          These attorney fees and costs were not discharged.  Any further dispute regarding the

8  amount of fees that are appropriate for this time period can be resolved in the Superior Court

9  action, consistent with the foregoing direction as to which fees and costs were discharged and

10  which were not. The determination of the amount of fees appropriate to the cross-claim during

11  this time period is a post-petition matter and part of the Superior Court action, not the bankruptcy

12  case.  No further hearing before this court is required.

13  **V. Conclusion**

14          The debtors' discharge injunction enjoins PCC from pursuing their $36,740.89 claim for

15  appellate attorney fees  against the debtors.  However, the debtors' discharge injunction does not

16  cover those attorney fees and costs incurred by PCC in defending the debtors' cross-complaint

17  after May 3, 2005.  No sanctions against PCC are granted.

18

19  DATED: September *10*, 2007

20                                                    Maureen Tighe

21                                                    _____
                                                     MAUREEN A. TIGHE
                                                     United States Bankruptcy Judge

22

23

24

25

26

- 13 -

1

## CERTIFICATE OF SERVICE BY MAIL

2      I certify that a true copy of this **ORDER** was served on ___SEP 1 0 2007___ to the
parties listed below:

3

Aria & Donna Kozak
4   2800 Neilson Way, #609
Santa Monica, CA 90405

5

David R. Hagen
6   Merritt & Hagen
6320 Canoga Ave., Ste. 1400
7   Woodland Hills, CA 91367

8   David Seror
Chapter 7 Trustee
9   Moldo, Davidson, Fraioli, Seror & Sestanovich
2029 Century Park East (Twin Towers)
10  21st Floor
Los Angeles, CA 90067

11
Frank X. Ruggier, Esq.
12  Danning, Gill, Diamond & Kollitz, LLP
2029 Century Park East, 3rd Floor
13  Los Angeles, CA 90067

14  U.S. Trustee's Office
21051 Warner Center Lane, Ste. 115
15  Woodland Hills, CA 91367

16  Paul Beechen, Esq.
1900 Ave. of the Stars, Ste. 2300
17  Los Angeles, CA 90067

18  Kathleen P. March, Esq.
The Bankruptcy Law Firm, P.C.
19  10524 W. Pico Blvd., Ste. 212
Los Angeles, CA 90064

20
Richard L. Knickerbocker, Esq.
21  Knickerbocker Law Corp.
233 Wilshire Blvd., #400
22  Santa Monica, CA 90401-1214

23  Nomi L. Castle
Matthew J. Luce
24  Castle & Associates
1925 Century Park East, Ste. 210
25  Los Angeles, CA 90067

26

- 14 -

1    Frank M. Lanak, Esq.
     c/o American Contractors Indemnity Co.
2    9841 Airport Blvd., 9th Floor
     Los Angeles, CA 90045

3

4                    SEP 1 0 2007                    Jewell M. Williams

5    Dated:_____
                                          DEPUTY CLERK

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26